BOUCHAUD, Executor, &c., Appellant *vs.* DIAS and FURMAN, Respondents.

An assignment by a debtor, who is insolvent, of his property in trust for the benefit of a single creditor or surety, containing no provision for the benefit of creditors generally, is not within the act of Congress which declares the United States entitled to priority of payment, "in cases where a debtor not having sufficient property to pay all his debts shall make a voluntary assignment thereof for the benefit of his creditors."

Accordingly, where a debtor made such an assignment of his property, and his surety in certain Custom House bonds filed a bill, claiming that the United States had acquired a right to be first paid, and to be subrogated to that right on the ground that as such surety he had been compelled to pay the bonds; *held*, that the bill could not be sustained.

Costs on an appeal to the Court of Appeals are in the discretion of that Court and when the decree of the Court below is reversed, it should be without costs.

Appeal from Chancery. Joseph L. Dias and Job Furman, filed their bill in Chancery before the Vice Chancellor of the First Circuit, in which the case was stated in substance as follows :—Castro and Henriques, partners in trade in the city of New York, on the 13th day of May, 1823, made an assignment to Louis A. Brunel of a large amount of property in trust, firstly, to pay a debt which they owed Brunel; secondly, to pay two notes made by them and endorsed by him, and certain Custom House bonds given for duties upon goods imported by them, executed by Castro as principal and Brunel as surety ; and lastly, to pay over or reassign the surplus of the effects assigned, to the assignors, or hold it upon such trusts as they should appoint. The debt and notes provided for amounted to $6,873, and the Custom House bonds to $30,626. The assignment made no provision for any other debts than those already specified, and the declared object of making such assignment was to pay the debt due to Brunel, and to secure him for his liabilities upon the said notes and Custom House bonds, and to enable him to pay off and discharge them. The amount of property, assigned was $80,000 and the assignors were insolvent. The assignment on its face did not purport to convey all their property, but such was alledged to be the fact.

26

The bill also charged, that at the time of the assignment Castro and Henriques were largely indebted to the United States upon other Custom House bonds, three of which were signed by the complainant Furman as surety, and which he paid to the United States on the 15th of December, 1824, after suit and judgment against him and Castro upon the bonds.    The amount paid by him was $3,737,52.    The complainant Dias was a co-surety with Brunel on two of the bonds provided for in the assignment, on which judgments were obtained against him, Brunel and Castro, March 1, 1824, and Dias paid to the United States upon these judgments the sum of $1,000, on the 7th of November, 1834.

The bill insisted, that by reason of the facts stated, the United States acquired a right of priority of payment out of the assigned property over all other creditors under the act of Congress hereafter referred to, and that the complainants in consequence of having been compelled as sureties, to make the payments above mentioned, were entitled, in respect to the sums so paid, to stand in the place of the United States, and be preferred in the same manner.    But the bill admitted that the right so claimed was to be shared in common with the United States, which still held unpaid bonds of Castro, given for duties as aforesaid, to the amount of about $10,000, on the most of which one Thouillier was the surety.

The bill further charged, that the property assigned to Brunel was sufficient not only to pay all the debts provided for in the assignment, but all the Custom House bonds of Castro, and a large dividend on the other debts of Castro and Henriques, but that Brunel, in disregard of the rights of the United States, and of the duty he owed to the sureties of Castro in the bonds, paid the simple contract debts mentioned in the assignment, being $6,873, and thereby made himself personally answerable for that amount.    That Brunel died 29th July, 1833, having made his will whereby the defendant Bouchaud was appointed his executor, and that Bouchaud as such executor took possession of a large amount of the property of his testator, including the effects assigned to him by

Castro and Henriques which had not been applied to the payment of their debts; also, that the said executor paid sundry simple contract creditors of Brunel, without regard to the preference due to the United States, and mingled the trust fund with the individual property of Brunel; and the bill insisted that Bouchaud was personally liable, to the extent of the assets received by him, for the debts of Castro and Henriques which Brunel in his lifetime had fraudulently failed to discharge.

Bouchaud, Castro and Henriques, and the United States, were made defendants to the bill and the prayer was, that the complainants might be paid the amounts which they had respectively paid as sureties upon the bonds, and interest, from the estate of Brunell if that should be sufficient, and if not then that Bouchaud might be personally charged.

It was claimed on the part of the complainants, that the right of the United States to priority of payment of the Custom House bonds, arose under the act of Congress, passed March 2, 1799, § 65, (1 *Story's Ed. Laws U. S.* 630) which enacts, "that in all cases of insolvency, or where any estate in the hands of executors, administrators or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States on any such bond or bonds shall be first paid, and any executor, administrator, or assignee, or other person, who shall pay any debt due by the person or estate, for whom or for which they are acting, previous to the debt or debts so due to the United States from such person or estate being first duly satisfied and paid, shall become answerable in their own person or estate for the debt or debts so due to the United States, or so much thereof as may remain due and unpaid; and actions or suits at law may be commenced against them for the recovery of the said debt or debts in the proper Court having cognizance thereof." A subsequent clause in the same section declares, "The cases of insolvency mentioned in this section, shall be deemed to extend as well to cases in which a debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors,

or in which the estate and effects of an absconding, concealed or absent debtor, shall have been attached by process of law, as to cases in which an act of legal bankruptcy shall have been committed.

. The defendant, Bouchaud, put in a demurrer to the bill for want of equity, which was overruled .by the Vice Chancellor, whose decision was affirmed by the Chancellor on appeal. Bouchaud appeals to this Court.

*E. Sandford,* for Appellant.

*J. L. Mason,* for Respondents.

*B. F. Butler,* for the United States.

Bronson, J.  The Act of Congress, (1799, *Chap.* 128, § 65.) so far as it touches the present question, only gives a priority to the United States in cases of insolvency, where a "debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof, for the benefit of his or her creditors." This provision never has been, and I think never should be, carried beyond cases where the debtor has made an assignment for the benefit of his creditors in general. Here the assignment was made for the benefit of Brunel; and for no one else. No debts were to be paid, ex cept such as were due to him, and those for which he had made himself liable, either as endorser or surety, for the as- signors. It is true that paying the debts for which Brunel stood as endorser or surety would in effect satisfy the credit- ors to whom those debts belonged. But that was only an incidental effect of an assignment which was made for the bene- fit of Brunel alone. No fair and reasonable construction of. the act of Congress will give the government a preference when the debtor has only assigned his property for the pur- pose of paying or indemnifying a single creditor or surety. This question was considered, and the authorities were exa- mined in the *U. S.* vs. *McLellan,* (3 *Sumner* 345) and although this case may be distinguished from that, the reasoning of Mr.

Bouchaud *v*. Dias.

Justice Story goes the whole length of deciding that this bill cannot be maintained, and I am fully of that opinion.

The assignment states very distinctly the object for which it was made ; and there is nothing in the case to impeach the statement.

The decree of the Court of Chancery should be reversed ; and a decree should be entered allowing the demurrer and dismissing the complainants' bill, with costs in the Court of Chancery.  Costs on the appeal are in the discretion of the Court; (2 *R. S.* 618, § 25) and where a decree is reversed, I think no costs should be given.  That was the rule of the late Court of Errors for a long time, and until within a very recent period.

Such are my views of the case, and such is the judgment of the Court.

                                   Decree accordingly.


Jewett, Ch. J., dissented.