McFalls v. State.

Opinion delivered December 3, 1898

1. CRIMINAL TRIAL—FALSITY OF OPENING STATEMENT.—The failure of the court to instruct the jury to disregard certain statements of the prosecuting attorney as to what the evidence would show, which statements were not sustained by evidence, is not prejudicial where the court was not requested so to instruct, and it was apparent to the jury that the evidence was not what the prosecuting attorney expected it to be. (Page 18.)

2. EVIDENCE—WHEN NOT PREJUDICIAL.—The admission of evidence tending to connect with the crime one indicted jointly with defendant is not prejudicial to the latter. (Page 21.)

3. ACCOMPLICE—CONCEALMENT OF CRIME.—One who conceals crime from anxiety for his own safety, and not to shield the criminal, is not an accomplice. (Page 22.)

4. TRIAL—JUROR—UNDUE INFLUENCE.—The proof was that the officer in charge of the jury, after the case had been submitted, asked one of the jurors, while separated from his fellow jurors, how the jury were running, and that the juror replied, "Pretty well; I think we will get through in two or three hours." The officer then said, "If you do, I will get the judge to come over, and then we may get some rest to-night." *Held* not to show that the juror was subjected to undue influence. (Page 22.)

Appeal from Sevier circuit court.

WILL P. FEAZEL, Judge.

*George Vaughan*, for appellant.

Unless a conspiracy be proved by evidence *aliunde*, it is not competent to introduce evidence of an alleged co-conspirator's acts. 3 Greenl. Ev. § 94; Whart. Ev. § 1206; Gillett, Ind. and Col. Ev. § 28; 32 Ark. 220; 37 Ark. 67; 45 Ark. 132. The court should have excluded this evidence, on the state's failure to prove a *prima facie* conspiracy. Clark's Cr. Prac. 522; 2 McLain, Cr. Law, §§ 988–990. Nor could evidence of the acts and declarations of an alleged accomplice, after the commission of the crime, be received in evidence. 1 Greenl. Ev. § 111; 3 *ib.* § 94; Whart. Crim. Ev. § 699–700; Kerr, Homicide, 490; 20 Ark. 216; 45 Ark. 132; *ib.* 165; 21

So. 404; 40 S. W. 596; 2 Whart. Crim. Law, § 1406. Instruction No. 9, for the state, was erroneous, in that it was not based on any evidence. 15 Ark. 491; 14 Ark. 530; 16 Ark. 628; 42 Ark. 57; 49 Ark. 543; 12 Pac. 106. The court gave contradictory instructions, which was error. Wells, Questions of Law and Fact, 36, 37; 53 Ark. 117; 58 Ark. 473, 480; 41 Mich. 433. In capital cases, at least, it is error to allow the jury to separate after the cause is submitted. 12 Ark. 782; 34 Ark. 341; 44 Ark. 115; 57 Ark. 1; 12 Am. & Eng. Enc. Pl. & Pr. 566; Proffatt, Jury Tr. §§ 395, 396; 3 Minn. 444, 447; 5 Cal. 275; Sand. & H. Dig. § 2239; 56 Ga. 653; 12 La. Ann. 710; 10 Yerg. 241; Hayne, New Ter. & App. § 68, par. 2a. The communication between one of the jury and the officer in charge as to the probable length of their deliberations is a ground for new trial. 10 So. 579; Proff. Jur. Tr. § 391; 14 So. 181; 31 Ga. 639; 42 Mich. 267; 12 Am. & Eng. Enc. Pl. & Pr. 543. The presumption is that the misconduct of the jury was prejudicial. Thomp. & Merriam, Jur. § 438. It was error to allow the prosecuting attorney to make statements in his open argument which the evidence did not sustain. 78 Ga. 592; 68 Ala. 476; 48 Ark. 131; 30 N. W. 630; 4 N. E. 911; 33 N. E. 991; 41 N. E. 545; 75 Ind. 215, 221; 38 Kas. 53; 11 N. W. 174; 36 O. St. 201; 44 Wis. 282; 62 Ala. 155; 71 Mich. 452; 35 Mich. 371; 126 Ill. 150; 35 Mich. 371, 392; 62 N. W. 572; 11 Ga. 633, 634; 41 N. H. 317; 52 N. W. 873; 75 N. C. 306; 79 N. C. 589; 2 Enc. Pl. & Pr. 727; 1 Bish. Crim. Law, § 969; Ell. App. Prac. § 672; Kerr, Hom. § 305; 1 Thomp. Tr. §§ 263, 264; ib. pp. 754, 755; 68 Ala. 476; 18 Tex. App. 524, 564; 19 Tex. App. 227; Sand. & H. Dig. § 2220; 3 Rice, Ev. § 180. The evidence wholly fails to support the verdict, and same should be reversed. 34 Ark. 632; 49 Ark. 364; 59 Ark. 50; 27 S. W. 225; 63 Ark. 457; Hill, N. Tr. chap. 14.

*E. B. Kinsworthy*, attorney general, and *Chas. Jacobson*, for appellee.

Evidence of the acts and declarations of a co-conspirator is admissible if collusion is shown *prima facie* or in such a

measure as to properly present the question to the jury. 32 Ark. 331; 57 Ia. 427–8; 1 Greenl. Ev. § 111; 3 *ib.* § 94; 53 N. Y. 472; 6 Am. &Eng. Enc. Law (2 Ed.), 866b; 143 N. Y. 455. The least degree of consent or collusion makes the act of one the act of all. 92 N. C. 732, 737–747; 11 S. C. 197; Underh. Crim. Ev. § 491; 2 Starkie, Ev. 234; 12 Tex. App. 65. It is not material as to the order of introducing the proof. 122 Ill. 8; 1 Greenl. Ev. § 111; 18 Kas. 298; 6 Am. & Eng. Enc. Law (2 Ed). The conspiracy being shown, it is immaterial as to whether or not defendant was present at the making of the declarations of a co-conspirator. 45 Fed. 872; 32 Ark. 220; 2 McClain, Crim. Law, § 988. The ninth instruction was sustained by sufficient evidence. 22 Ark. 477; 50 Ark. 545. One who conceals a crime through fear of the criminal is not an accessory after the fact or an accomplice. 45 Ark. 539. The jury's finding that one is not an accomplice is conclusive. 43 Ark. 367; 51 Ark. 115; 51 Ark. 189. The only effect of the affidavit showing that a juror had spoken with an officer during their deliberations was to put on the state the burden to disprove prejudice to defendant. 12 Ark. 782; 13 Ark. 323; 20 Ark. 53; 26 Ark. 323. The arguments of the prosecuting attorney were not improper. 34 Ark. 658; 58 Ark. 353; 66 N. W. 41; 22 La. 497; 104 Ind. 467; 18 Tex. App. 564; 55 Mo. 520; 92 Ind. 477; 4 Am. & Eng. Enc. Law, 875.

BATTLE, J. Henry Williamson and Will McFalls were jointly indicted for murder in the first degree, committed by feloniously, wilfully, maliciously, deliberately, and premeditatedly killing one Joe Wright. Upon arraignment they pleaded not guilty, and severed in their trials. Will McFalls was tried, and convicted of murder in the first degree. He has appealed to this court, and assigns many reasons why his conviction should be set aside. He says, among other things, that he is entitled to a new trial, because the prosecuting attorney, in his opening statement to the jury of what he expected to prove, was permitted by the court to make the following remarks: "The evidence will show that Henry Williamson, jointly indicted with this defendant, had on divers occasions made threats against

the life of the deceased. These threats were occasioned by the following circumstances. Several months ago one of Henry Williamson's daughters had gone astray. Her father was so incensed that he was heard to say that if ever one of his daughters was misled again he would kill the perpetrator of the wrong, and let the law take its course. Just prior to the killing, one of his daughters was again found in a bad fix, and the deceased, Joe Wright, was the accused party. The evidence will further show that the defendant, Will McFalls, had married a niece of the said Henry Williamson, and it is the theory of the State that the two defendants met at the place of the killing on the fatal Sunday morning, knowing that the deceased would pass along the road, and there assaulted and murdered him. It will further appear from the testimony that, on the Thursday following the disappearance of the deceased, said Henry Williamson had exhibited to Dr. Graham a wound in his side, which had been made with a knife or razor; but that he explained to the doctor that the wound had been made by a plow handle in a runaway scrape, that his horse had run away and broken the plow lines. Gentlemen, we have got the plow lines, and they show, beyond question, to have been cut, instead of broken. The wound, when exhibited to the doctor, was partially healed, and we will show that it had been made some three or four days previously." No evidence was adduced tending to prove any of these statements, except the following testimony of Dr. Graham: "I saw Henry Williamson on Thursday morning following the disappearance of Joe Wright. I saw a cut place on his side about three inches long, and it looked to have been made by some sharp instrument, such as a knife or razor. The wound was beginning to heal, and appeared to have been made three or four days previous." The court did not instruct the jury to disregard any of the statements made by the prosecuting attorney, and the defendant did not ask it to do so. Did the court err in failing to do so?

Every man accused of a crime, before he can be legally convicted and punished, is entitled to a fair and impartial trial, according to law; and it is the duty of the courts and the prosecuting attorneys to see that this right is upheld and sustained in all prosecutions coming before them.

The statutes of this state provide that, after the jury in a criminal case has been duly impanelled and sworn, the prosecuting attorney may then read to it "the indictment, and state the defendant's plea thereto, and the punishment prescribed by law for the offense, and may make a brief statement of the evidence on which the state relies;" and "the defendant, or his counsel, may then make a brief statement of the defense, and the evidence upon which the defendant relies" (Sand. & H. Dig., §§ 2220, 2221). The object of these statements is to enable the court and jury to more readily understand the issues to be tried and the evidence subsequently adduced. The statutes, in effect, say that they must be brief. But this means that they must be a summary or outline of the evidence intended to be offered, and sufficiently clear and full to accomplish the purpose for which they were made. In making them parties should not be allowed to go beyond the limits of the object they are intended to subserve. Neither one should be permitted to pervert them from the office they are designed to fill into an argument to convince the jury, in advance of the evidence, that their verdict should be in his favor, or to use them, by making appeals, or irrelevant, false, exaggerated or improper statements, which he cannot or will not be permitted to prove, to prejudice their minds against his adversary. In all such cases it is the legal duty of the court to interfere in the interest of justice, and prevent such unfair and illegal advantages, with promptness and efficiency. *Scripps* v. *Reilly*, 35 Mich. 371, 388; *People* v. *Montague*, 71 Mich. 447, 452; *McDonald* v. *People*, 126 Ill. 150; *Campbell* v. *City of Kalamazoo*, 80 Mich. 655.

It is clear that some latitude must be allowed to a prosecuting attorney in making his opening statement to a jury. He may not always find that the evidence will "meet the case he expects to make." He may have been misinformed. Witnesses may not testify as they represented facts to be. It would be an unreasonable rule which would require him to state only such facts as the evidence will sustain. All that can be reasonably required of him, in this respect, is good faith. Hence it is not every statement that the evidence fails to sustain that will entitle a defendant, in case he is convicted, to a

new trial. Such statements, however, may be so unfair or prejudicial as to justify the setting aside a verdict against the defendant, and make it the duty of the trial court to do so; but they must result in bringing to the attention of the jury matters of a nature calculated to create such a prejudicial impression upon the minds of the jury that a charge of the court would or might not be sufficient to eliminate the prejudice produced thereby, in order to justify an appellate court in vacating a judgment on such grounds; and, it is said, "in determining whether such an error has been committed, it is believed to be safe to credit the jury with at least average intelligence." *Prentis* v. *Bates*, 93 Mich. 234, 238; *Porter* v. *Throop*, 11 N. W. Rep. 174; *People* v. *Fowler*, 62 N. W. Rep. 572, and cases above cited.

In this case the opening remarks of the prosecuting attorney, except as to the rope, were statements as to what the evidence would show. Except as to the rope, he made none, as to what the facts actually were. In so far as his statements were not sustained by the testimony, the jury could see that the evidence was not what he expected it to be. To that extent, what he said was disproved; and his representations as to the rope could have no greater effect than those in connection with which they were made.

The appellant insists that the court erred in admitting, over his objection, the testimony of Dr. Graham, which we have stated, and the testimony of Abe Jeter, which was as follows: "I met Henry Williamson at the Jerry Gill place, about a mile north of defendant's house, at about half-past 7 o'clock on the morning of the fifth Sunday in May. He was going in the direction of defendant's house. Henry had three of his boys with him. They were on horseback, one of the boys riding behind Henry. He said he was going to Nev. Hopson's. He was also going in that direction." If the contention of the appellant be correct, there is nothing to indicate that the error of the court in admitting the testimony was prejudicial. It did not connect him with the commission of the offense. It only tended to show, if anything, Williamson's connection with it. The same is true of the opening remarks of the prosecuting attorney.

Appellant contends that the court erred in instructing the jury as follows: "9. You are instructed that if you believe from the evidence, that the witness John Gigger concealed the crime in this case from the magistrate from anxiety for his own safety, and not to shield the criminal, he would not be an accomplice, and his evidence would not have to be corroborated in order that you convict the defendant." But this instruction is upheld and sustained by the decisions of this court. *Melton* v. *State*, 43 Ark. 367; *Carroll* v. *State*, 45 Ark. 539.

After this cause had been submitted to the jury, about 11 o'clock in the night, one of the jurors, with the officer in charge of the jury, retired about ten steps from where the jury were locked up, "to attend to a call of nature," and remained away about five minutes, and during that time conversed with the officer, a deputy sheriff. The juror relates the conversation and what occurred as follows: "He asked me how we were running. I said, 'Pretty well. I think we will get through in two or three hours.' He said: 'If you do, I will get the judge to come over, and then we may get some rest to-night.' I then went near the court yard fence, but not outside. Was only there a few minutes, and came back as soon as I could. I had no other conversation with the deputy sheriff, except as related; did not discuss the case with him, except as stated, and was not with, and did not speak to, any other person than the deputy sheriff." The deputy sheriff, in a sworn statement, corroborates what he says. No one contradicts it. These statements are sufficient to show that the juror was not subjected to any undue influence while he was separated from his fellow jurors. *Maclin* v. *State*, 44 Ark. 115; *Vaughan* v. *State*, 57 Ark. 1.

The evidence is sufficient to sustain the verdict in this court. However unsatisfactory it might be to us, it does not come within our province to set it aside.

Judgment affirmed.

WOOD, J., dissents.