## TAPP v. WILLIAMS.

Opinion delivered June 3, 1907.

1. ASSIGNMENT—WHAT CONSTITUTES.—When a debtor executes an instrument in whatever form or by whatever name, with the intention of having it operate as an assignment, and with the intention of granting the property conveyed absolutely to a trustee to raise funds to pay debts, the transaction constitutes an assignment for the benefit of creditors. *Richmond* v. *Mississippi Mills,* 52 Ark. 30, followed. (Page 185.)

2. SAME—GARNISHMENT OF FUNDS IN ASSIGNEE'S HANDS.—Where an assignment is declared void for any cause, the statute (Kirby's Digest, § 339) requires that it be treated as a general assignment for the benefit of all the creditors *pro rata;* and no one of the creditors has the right by garnishment to subject the trust fund to the payment of all his debt to the exclusion of the debts of others. (Page 185.)

Appeal from Union Circuit Court; *Charles W. Smith,* Judge; affirmed.

STATEMENT BY THE COURT.

Tapp, Leathers & Company sued the firm of Williams & Pratt in the Union Circuit Court on account for $573.20.

The defendants, Williams & Pratt, answered, denying that they were indebted to appellants in any sum, and set up by way of defense the following:

"That they, being in failing circumstances and insolvent, notified the plaintiffs and all others of the defendants' creditors of defendants' condition, and offered to make full surrender to R. G. Harper, as trustee, of all their property for the benefit of plaintiffs and defendants' other creditors. That this proposition was accepted by plaintiffs and the other creditors of defendants, and that, acting under this agreement, they made a full surrender of all their property in satisfaction of their debts, and same is now in the hands of R. G. Harper, as trustee, for the benefit of plaintiffs and defendants' other creditors, in the said proceeds of said property to be prorated amongst the creditors of defendants. That defendants have in all things fully complied with agreement mentioned herein, and have made a full and complete surrender of all the assets, and all of which was well known to plaintiffs at the institution of this suit. Defendants, further answering, say that, by reason of the agreement and

surrender of their property aforesaid, the other creditors of defendant have acquired a valuable interest in said assets; that the plaintiffs, if permitted to prosecute their suit herein and subject said assets to the payment of their debt in full, would practically absorb all the assets so surrendered."

They pray that the suit be dismissed with judgment in their favor for costs.

Appellants filed allegations and interrogatories against R. G. Harper as follows: "That the said R. G. Harper, garnishee herein, by virtue of an alleged assignment for the benefit of creditors or in some other way, came into possession of seven hundred dollars, the same being the proceeds or a part thereof of the assets of the defendants herein."

Plaintiff propounds the following interrogatory to the said R. G. Harper, garnishee herein:

"Has the sum of seven hundred dollars, or any other sum or any goods, chattels, moneys, credits or effects belonging to the defendants herein, come into your possession, directly or indirectly, by virtue of an assignment for the benefit of creditors, real or alleged, or in any other way, and were they in your possession at the time of the service of the writ of garnishment herein?"

Appellee Harper as garnishee answered as follows:

"That the sum of seven hundred dollars came into his hands by virtue of written agreement and further by an agreement between him and the said defendants to the effect that he was to hold same and endeavor to get the creditors of said defendants to accept a proportionate part of same and the other assets of said firm, and that said creditors did so agree, and that portion of said fund was in his hands as such at the time of the service of the garnishment herein, and was and is now held by him in trust for the said creditors of said Williams & Pratt as their attorneys."

The court, on demurrer to the answer, rendered judgment against Williams & Pratt for the amount of the account and interest, amounting to $670.40. On the issue raised by the garnishment, R. G. Harper testified as follows:

"About the Christmas holidays of 1901, I went to see Williams & Pratt in the collection of some claims. They stated

that they were indebted over $15,000. A remnant of a stock of goods and some notes and accounts composed their assets. They desired to turn over to me as trustee for the creditors the assets they had. They turned them over to me subsequently. At the time I understood all the creditors had agreed to accept them. I do not recall whether I had an inventory made. The $700 I received was derived directly from the sale of the stock of goods. There was a written article or written agreement. I do not know that I ever showed it to plaintiffs' attorney. I had forgotten about having it until Mr. Chew told me he had seen it. I think plaintiffs' attorney asked me once or twice about the assignment, and I told him I would look it up. This is the only instrument executed as my authority for acting as trustee. I did not understand that I was taking an assignment under the law of assignments. I looked for the paper recently, and found it among the Williams & Pratt accounts. It is my recollection that at the date of the assignment, February 10, 1902, Mr. Floyd had agreed to accept the compromise and allow me to take the assets of the firm in trust for the creditors. The $700 was turned over to me with the understanding if the creditors would accept it I was to let them have it, and I had that agreement with all the attorneys representing the creditors. Nothing was said about what was to become of it if they did not accept. The assignment is not acknowledged, and I do not call it an assignment.

Mr. N. C. Marsh testified that he represented some of the creditors of Williams & Pratt. He, after nearly a year, accepted the compromise. This suit was brought the next week after he accepted. A few days before he accepted the proposition of compromise, he and Mr. Floyd had some conversation about it, and Mr, Floyd did not state that he would or would not accept the proposition, but witness took it for granted. Mr. Harper frequently stated that all the attorneys except the witness (Marsh) had agreed to the compromise. Witness stated that Mr. Floyd had favored bankruptcy proceedings very strongly. Mr. Floyd testified as follows:

"I am attorney for Tapp, Leathers & Co. in this suit. I at all times advised against Mr. Harper taking charge of the goods in the manner proposed. I advised bankruptcy. Clients could find only one other creditor who was willing to join them in

bankruptcy. They then directed me to bring suit against Mr.
Harper. They never authorized me to accept the arangement of
Mr. Harper. I positively refused to accept the compromise.
I know I never had the authority to agree to the compromise,
and I am certain I never did."

The instrument which Mr. Harper said was his only authority for taking possession of the goods as trustee is not in the
record here. The court, after hearing the evidence, dismissed
the writ of garnishment, and rendered judgment for the garnishee
for costs. Appellants filed motion for new trial, setting up that
the verdict of the court as to the garnishment was against the
evidence, and against the law  The motion was overruled, and
this appeal taken.

*R. L. Floyd,* for appellant.

*Marsh & Flenniken* and *W. D. Chew,* for appellees.

WOOD, J., (after stating the facts). The answer of the
defendants in the original suit and the proof in the case show
that the instrument under which Harper, appellee, took possession
of the assets was intended by its makers, the judgment debtors,
as an assignment for the benefit of creditors. The proof shows
that the debtors, the defendants in the original suit, intended by
the instrument they executed to Harper, and under which he took
possession of the assets, to transfer their property absolutely to
the trustee, Harper, for the purpose of raising a fund to pay
their debts. There were no preferences, and the instrument therefore was a general assignment. The instrument itself was before
the lower court, but it has not been brought into this record.
We must presume therefore that the court found that it was a
valid assignment. This court held in the case of *Richmond* v.
*Mississippi Mills,* 52 Ark. 30, that where a debtor executed an instrument "in whatever form, or by whatsoever name, with the intention of having it operate as an assignment, and with the intention of granting the property conveyed absolutely to the
trustee to raise a fund to pay debts, the transaction constitutes
an assignment." That doctrine makes the transaction under review here an assignment. The assignment has not been called
in question in any manner authorized by the law (Kirby's Digest
§ 339) ; and, even if it had been declared void "for any cause,"

ıt would still be treated in equity as a general assignment for the benefit of all creditors *pro rata.* Kirby's Digest, § 399. See *Moore v. Goodbar,* 66 Ark. 16. The assignment of the debtor's assets for the benefit of all the creditors must, under the statute, go to all the creditors *pro rata.* No one of them has the right by garnishment to subject the trust fund to the payment of all his debt to the exclusion of the debts of the others. The judgment of the circuit court dismissing the garnishment is affirmed, but without prejudice to the rights of appellants to go into a court of equity to subject the trust funds in the hands of appellee to the payment, *pro rata,* of their debt.

HILL, C. J. dissenting.