FRANKLIN ANDREW DUNFEE, MARY LOUISE DUNFEE.
PAT HOPE AND GENEVA HOWE *v.* STATE OF ARKANSAS

5229                                          412 S. W. 2d 614

Opinion delivered March 20, 1967

*Eugene Coffelt* and *Jeff Duty,* for appellant.

*Joe Purcell*, Attorney General; *Don Langston,* Asst. Atty. General, for appellee.

CONLEY BYRD, Justice. Appellants, Franklin Dunfee, his wife, Mary Louise, his sister, Geneva Howe, and her husband, Pat Howe, appeal from a conviction of assault with intent to kill. For reversal they rely upon certain comments of the court during the cross-examination of Klela Dunn, one of the prosecuting witnesses; remarks of the prosecuting attorney in his opening statement to the jury relative to the characters of appellants;

and a remark of the prosecuting attorney in his closing argument.

The facts show that on December 26, 1965, the four appellants and a young man named Barnes were riding in a jeep on lands of the prosecuting witness, Joe O'Neal, where they had gone ostensibly for the purpose of target practicing with their rifles. When the prosecuting witnesses, Joe O'Neal, his wife, his daughter, Klela Dunn, and his son-in-law, Ralph Dunn, observed appellants in the jeep, they started yelling, 'Stop, stop, stop!'' At this point the jeep was backed up, struck a tree, was turned around and was driven down through the woods with the prosecuting witness, Ralph Dunn, in pursuit thereof on foot. Mr. Dunn fell over a log, got up and fired at least one shot with a derringer. Because the muffler was knocked loose on the jeep while appellants were driving through the woods, the prosecuting witnesses were able to ascertain that the jeep had been driven back onto the county road bisecting the property either owned or managed by the prosecuting witnesses. After the muffler was repaired, appellants started back east and as they topped the hill came upon the prosecuting witnesses.

The prosecuting witnesses and the appellants gave differing versions of what happened after the jeep topped the hill. The prosecuting witnesses testified that they were walking along the road toward the place where the jeep had stopped for the purpose of ascertaining where it had knocked the fence down. They stated that Mr. Dunn had the derringer in his pocket and that Mrs. Dunn was carrying a .22 rifle, intending to shoot a squirrel for her father, Mr. O'Neal. Appellants' testimony was that when they topped the hill, Mr. Dunn had the derringer in his hand and Mr. O'Neal had the .22 rifle, and both guns were pointed at appellants. All parties agreed that the jeep had run the prosecuting witnesses off the road, that some shooting and hair-pulling had occurred, and that Mr. O'Neal had been wounded.

There is testimony in the record indicating that Mr. John Dunfee, father and father-in-law of appellants, had leased the lands, which the prosecuting witnesses had either owned or had under their management, upon a written lease that had expired January 1, 1965, and that he was a holdover tenant of the lands on a year-to-year basis at the time the prosecuting witnesses either bought the land or took over the management thereof. At any rate, after the prosecuting witnesses took charge of the property, they posted the lands. At least one of the posted signs read, "Posted—No trespassing. Survivors will be prosecuted."

Klela Dunn was called by the prosecution as a witness after her husband had already testified. Her testimony, on direct, corroborated her husband's testimony as to who had the .22 rifle and what was the purpose of walking along the road toward the place where the jeep had been stopped. During cross-examination of Mrs. Dunn, the following occurred:

"BY MR. COFFELT:

Q. You had that pretty well memorized, didn't you?

MR. COXSEY: Now, that's not fair—.

THE COURT: Now, everybody is presumed to be telling the truth, Mr. Coffelt, each side.

MR. COFFELT: Well, it's cross examination.

THE COURT:. There is no information that anybody has memorized anything. That is not right before the jury. That's for the jury's conclusion.

MR. COFFELT: Save my exceptions. Save my exceptions to the remarks of the court.

THE COURT: Now, you are supposed to treat everybody with courtesy on both sides. When you say she's got it memorized, that is a reflection on her.

MR. COFFELT: Just take everything that is stated—.

THE COURT: Yes, indeed, take everything.

MR. COFFELT: The defendants at this time object to the remarks of the court: this being cross examination, the defendants have a large range of latitude on cross examination.

THE COURT: Yes, but everybody is a gentleman and a lady.

MR. COFFELT: I'll treat her as a lady. I haven't failed yet.

THE COURT: I know, but they are presumed to be telling the truth, too. Everybody on the stand is presumed to be telling the truth.

MR. COFFELT: Object to the remarks of the Court.

THE COURT: All right.

MR. COFFELT: Save our exceptions.''

We hold that the trial court's comment was prejudicial error. It is in violation of our constitution, article 7, § 23, which provides:

"Judges shall not charge juries with regard to matters of fact, but shall declare the law, and in jury trials shall reduce their charge or instructions to writing on the request of either party."

In *Williams* v. *State,* 175 Ark. 752, 2 S. W. 2d 36 (1927), we set out in the following language the reasons why a trial judge should preside with impartiality:

"...'From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other hand may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other . . . ' "

Upon the second point, with reference to the prosecuting attorney's opening statement, the record shows that the following occurred:

".... I think you will find before this case is concluded that the Dunfee people are very contentious people. I think you will find that they are overbearing people and that they have run over many people. I think you will observe from facts that they were a belligerent type of people—."

After objection was made, the prosecuting attorney continued:

"I am referring to the defendants and the close relatives of these defendants."

The trial court should have sustained the objection to the opening statement of the prosecuting attorney. However, we need not here decide that it was prejudicial error, for the error will not likely reoccur upon a new trial. See *McFalls* v. *State,* 66 Ark. 16, 48 S. W. 492 (1898).

The third point raised by appellants is without merit. It is entirely proper for the prosecuting attorney to tell the jury that in his opinion the defendants should be put in the penitentiary.

Reversed and remanded.