ROBSON *v.* TOMLINSON.

Decided February 21, 1891.

1. *Mortgage—When construed to be an assignment.*

To give a deed of trust, which is in form a mortgage, the effect of an assignment for the benefit of creditors, it is not sufficient that the debtor was insolvent, that immediate possession of the property was given to the trustee, and that the debtor could not reasonably expect, and did not intend, to pay the debt at maturity; *the parties must have intended that no equity of redemption should remain in the debtor.*

| | |
|---|---|
| 54 | 229 |
| 54 | 430 |
| 54 | 479 |
| 54 | 229 |
| 55 | 331 |
| 54 | 229 |
| 57 | 96 |
| 57 | 226 |
| 54 | 229 |
| 58 | 296 |
| 54 | 229 |
| 63 | 51 |
| 63 | 615 |
| 54 | 229 |
| 71 | 515 |
| 54 | 229 |
| 73 | 191 |
| 74 | 18 |
| 54 | 229 |
| 80 | 252 |

2. *Attachment — Conclusiveness of court's finding.*

> Upon the trial of an attachment where, from an agreed statement of facts, it may be inferred either that the parties intended to execute a mortgage, or that they intended to make an assignment, the trial court's finding that the former was intended is conclusive.

APPEAL from *Mississippi* Circuit Court.

J. E. RIDDICK, Judge.

Liston, a merchant at Osceola, Ark., conveyed his stock of goods and accounts to Tomlinson, as trustee for Toof, McGowan & Co., creditors at Memphis, Tenn., to secure a note to them for $3700, due five days after date. The instrument of conveyance is in terms as follows:

"This deed, made and entered into this, the 23d day of November, 1889, by and between James Liston, of the county of Mississippi, State of Arkansas, party of the first part, and Toof, McGowan & Co., a firm doing business in the city of Memphis, State of Tennessee, as grocery merchants, parties of the second part, and H. D. Tomlinson of the county of Mississippi, State of Arkansas, party of the third part, Witnesseth, that the said party of the first part, in consideration of the debt hereinafter mentioned and created, and of the sum of one dollar to him in hand paid by the party of the second part, does by these presents bargain, sell, transfer and confirm unto the said party of the third part, the following described realty, goods, wares and merchandise, and all store fixtures, books and accounts, situated and being in my store in the town of Osceola, in the county of Mississippi, State of Arkansas. (Then follows a description of the property, consisting of a stock of goods, a lot in Osceola, and the book accounts of the debtor.)

"To have and to hold the same with all appurtenances to the party of the third part, and unto his successors in the trust deed, to him, his heirs and assigns forever. In trust, however, for the following purposes: Whereas, the said party of the first part has this day made, executed and delivered to the said party of the second part his note of even date herewith, by which he promises to pay to the

said party of the second part or order, for value received, the sum of $3711.86 in five days after date. Now, therefore, if the said party of the first part, or anyone for him, shall well and truly pay off and discharge the debt and interest expressed in said note, and every part thereof, when the same becomes due and payable, according to the times, terms, date and effect of said note, then this trust deed shall be void and the property herein transferred and conveyed shall be released at the cost of the party of the first part; but should the said first party fail or refuse to pay the said debt or any part thereof when the same shall become due and payable, as aforesaid, then this trust deed shall remain in full force and effect, and the said party of the third part, or, in case of his death or refusal to act, the acting sheriff of said county of Mississippi, State of Arkansas, at the request of the holders of said note, shall proceed to sell the property hereinbefore described, or any part thereof, at private or public sale, as he may deem best for the interest of the parties of the second part, at the store where they now are, or in some other store in the town of Osceola, Ark. He will sell for cash whether he sells at private or public sale; he may keep the goods in said town of Osceola for cash for the period of six months, unless he should sooner sell the same, or a sufficient amount thereof to satisfy said debt and interest and the expenses incident to the execution of this trust. At the expiration of which time, in the event that all of said debt or said expenses are not paid, and any part of said property described herein remains unsold, then he shall sell the same, or so much as may be necessary to satisfy said debt and expenses in administrating this trust, to the highest bidder for cash, after first giving notice of the time, terms and place of sale of the property to be sold in some newspaper printed in said county of Mississippi; and should he sell at public outcry or at auction at any other time, he shall first give the notice required above; and he is further authorized to receive the proceeds of such sales as he may make, and to execute

proper receipts; and should he sell out this lot of goods, wares, store fixtures, books and accounts, notes, merchandise, or any part thereof, he may employ such desired assistance as may be necessary to properly carry on such retail business, but in no event shall he employ more than two clerks; and should he sell all or any part of said property at public sale he may employ an auctioneer to make the sales; and the said party of the third part is hereby given immediate possession of the above described property. And such trustee shall, out of the proceeds of the said sales, pay first the cost and expenses of executing this trust, including legal compensation to the trustee for his services, and next shall apply the proceeds remaining over to the payment of said debt and interest, or so much thereof as remains unpaid, and the remainder, if any, to the party of the first part; and the said party of the third part covenants faithfully to perform and fulfill the trust herein created, not being liable for any mischance beyond ordinary care of the said property.

" In witness whereof, the said parties have hereunto signed and set their seals the day and year first above written. All erasures and interlineations herein were made before the signing and reading thereof.

JAS. LISTON, [L. S.]

TOOF, MCGOWAN & CO.

By E. L. McGowan. [L. S.]

H. D. TOMLINSON." [L. S.]

Robson, Block & Co., creditors of Liston, brought suit and caused an attachment to be levied upon the stock of goods. Tomlinson interpleaded, and set up a claim under the foregoing conveyance. The cause was tried upon an agreed statement of facts, the substance of which is as follows :

1. Tomlinson, the trustee, took possession of the property on November 23, 1889, and proceeded to sell some of the goods before maturity of the note, to-wit, November 28, 1889, but without the knowledge and consent of Toof, McGowan & Co.

2.  At the time of the execution of the instrument Liston owed about $20,000; the sheriff's inventory showed the stock of goods and other property to be nominally worth $10,000.   Liston was insolvent at the time the conveyance was executed.

3.  On November 28, one of his creditors offered to compromise at 40 cents on the dollar; Liston replied that his hands were tied so fast that he could not pay 10 cents on the dollar, and that it was useless to talk about compromising.

The court found in favor of the interpleader, and dissolved the attachment.   Plaintiffs have taken an appeal.

*U. M. & G B. Rose* for appellants.

1.  The instrument in this case was an assigment and void. 11 S. W. Rep., 960; 13 *id.*, 423; 5 Ohio St., 218; 53 Ark., 101.

*S. S. Semmes* for appellee, *McDowell & McGowan* of counsel.

1.  The instrument is a trust deed in the nature of a mortgage, containing an express defeasance clause.   It shows on its face that it is not an absolute conveyance to raise a fund to pay debts, and hence is not an assignment.   31 Ark., 437; 52 Ark., 41; Burrill on Assignments, pp. 33–4; 11 Humph., 283; 2 Johns. Ch., 283; 11 S. & M. (Miss.), 469; 4 Ala., 469; 43 Ark., 504; 18 *id.*, 166; 41 *id.*, 189; 32 *id.*, 478; 52 Ark., 48–50; 13 S. W. Rep., 424.

COCKRILL, C. J.   The instrument relied upon by Tomlinson, the interpleader, is in form a mortgage, and not an assignment for the benefit of creditors.   The presumption, until overcome by proof, is that the parties intended it to have the effect the law gives to a mortgage—that is, that it should stand as security for a debt.   The fact that it provides that the mortgagor should surrender immediate possession to the trustee for the mortgagee does not convert it into an assignment.   To accomplish that result, it must be shown that it was the intention of the parties that the debtor

1. When mortgage construed to be assignment.

should be divested, not only of his control over the property, but also of his title.  *Bank* v  *Crittenden*, 66 Iowa, 237.

The equity of redemption may be mortgaged or sold, and so be of value to a debtor who has not the pecuniary ability to redeem ; and he has a right to reserve it in dealing with his creditor, regardless of his solvency.  The insolvency of the debtor, and the fact that the instrument authorizes the trustee to take immediate possession and proceed to sell the goods at so short a period after its execution that it seems unreasonable that the debtor could have expected to exercise his right of redemption or derive a benefit from it, are circumstances which, in connection with other facts, may tend to show that the parties intended to make an absolute appropriation of the goods to raise a fund to pay debts, and so to make an assignment.  *Box* v. *Goodbar, ante* p. 6.   But they are not conclusive of that intent.  Neither the possession of the goods, nor the unreasonableness of the debtor's expectation of paying the debt at maturity, nor his intent never to pay, is the criterion for distinguishing a mortgage from an assignment.  The controlling guide, according to the previous decision of the court, is, Was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title and so make an appropriation of the property to raise a fund to pay debts ?  *Richmond* v. *Miss Mills*, 52 Ark , 30 ; *Fecheimer* v. *Robertson*, 53 *ib.*, 101 ; *Box* v *Goodbar, ante* p. 6.

If the equity of redemption remains in the debtor, his title is not divested, and an absolute appropriation of the property is not made.  In arriving at the intent of the parties, therefore, the question is, not whether the debtor intended to avail himself of the equity of redemption by payment of the debt, but was it the intention to reserve the equity ?  If so, the instrument is a mortgage, and not an assignment.

**2. Conclusiveness of court's finding.**  The cause was submitted to the court without a jury, and it found that the facts adduced in evidence were not sufficient to overcome the intention of the parties as expressed

in the mortgage.   It is sufficient to say that the finding is. not in the face of the proof.   The finding of the court in this class of cases is as conclusive as the verdict of a jury.. *Hanks* v. *Andrews*, 53 Ark., 327; *Riggan* v. *Wolf, ib.*, 537. The case stands then as though the court had declared the law in the appellant's favor, and a jury had returned a verdict against them upon evidence which we cannot say is insufficient to sustain it.   *Wolf* v. *Gray*, 53 Ark., 75.   The fact that the cause was tried upon an agreed statement of the facts and circumstances affecting it does not alter .the rule in that regard, because a jury would have been warranted in drawing from the whole case the conclusion that the parties were actuated by a motive consistent with the legal import of the instrument.

Affirmed.