GOODBAR *v.* LOCKE.

Opinion delivered June 11, 1892.

1. *Pledge—Assignment for benefit of creditors.*

A pledge of choses in action to a trustee for the benefit of certain creditors does not constitute an assignment for the benefit of creditors, since an equitable estate remains in the pledgor; nor does it hinder or delay unsecured creditors, since they may reach the pledgor's equitable estate under process.

2.  *Fraudulent conveyance—Case stated.*

> A firm of insolvent merchants, in pursuance of a plan agreed
> upon with certain of their creditors, made absolute conveyances
> to them of all their tangible property in payment of valid
> claims; and to further secure such claims pledged to one of the
> creditors as trustee all their choses in action as collateral secur-
> ity, with a direction that the residue of the pledge, after paying
> the debts secured, should be returned to the pledgors. In a
> suit at law by unsecured creditors to test the validity of the
> conveyances, *held*, that the conveyances, on their faces, were
> valid, and did not constitute an assignment for the benefit of
> creditors; and that a finding of the jury that there was no
> fraud in the transaction was conclusive, there being testimony
> to warrant it.

Appeal from Franklin Circuit Court in Chancery,
Ozark District.

Hugh F. Thomason, Judge.

Goodbar, Love & Co. sued W. R. & S. B. Locke,
alleging that they had made a fraudulent disposition of
their property, and procured writs of attachment to be
issued; also caused writs of garnishment to be served
on L. C. Locke, M. F. Locke and J. G. Orme, who filed
answers to the interrogatories, denying any indebtedness
or the possession of any assets.

The defendants had been engaged in a mercantile
business conducted on a credit basis under the style of
W. R. & S. B. Locke; were also interested in the cash
store of J. G. Orme & Co. They were indebted to their
father and brother, M. F. and L. C. Locke, in a sum
aggregating about $25,000, and owed J. G. Orme a con-
siderable sum. In pursuance of a plan agreed upon with
M. F. and L. C. Locke and J. G. Orme, defendants, on
November 12, 1888, executed a bill of sale of all the stock
of merchandise in the store of W. R. & S. B. Locke
invoiced at $5600 and valued at $4200; also certain live
stock worth $548, and fourteen bales of cotton worth
$600. They also conveyed to L. C. Locke a storehouse
and lot in the town of Alma for $400. In payment of

their debt to J. G. Orme, they conveyed to him by bill of sale their interest in the business of J. G. Orme & Co., and paid him $900 in money; and he assumed the debts of that partnership. They further conveyed to L. C. Locke all their notes and book accounts, aggregating about $45,000, by an instrument which, after reciting that M. F. and L. C. Locke had become security for the debts above mentioned, provided as follows:

"Now, therefore, in consideration of the sum of one dollar to us paid, and the consideration above expressed, we, W. R. & S. B. Locke, do hereby transfer, assign and set over unto L. C. Locke, as trustee for M. F. Locke and L. C. Locke, all notes and accounts due us from all parties whomsoever, as collateral, to secure said M. F. Locke and L. C. Locke for all indebtedness incurred by them, or either of them, by reason of said suretyship. (A schedule of said notes and accounts is hereby attached and made a part hereof.) And we hereby authorize and empower said L. C. Locke, as trustee, to collect said notes and accounts with all possible dispatch (and, in case a note or an account cannot be collected, to secure the same if possible), and out of the proceeds to pay, first, the necessary costs of collection of said notes and accounts; and, second, to pay to said M. F. Locke and L. C. Locke, or either of them, all sums, with legal interest, which they have paid out by reason of the suretyship herein specified, and after said M. F. Locke and L. C. Locke are fully indemnified, said trustees will return the residue to said W. R. & S. B. Locke."

Upon special interrogatories, the jury found that defendants, on November 12, 1888, were wholly insolvent; that they conveyed all their property to the garnishees at the same time and in pursuance of an agreement previously entered into with the garnishees. The general verdict was for the defendants. Plaintiffs have appealed.

*Winchester & Bryant* for appellants.

1.    The transaction was a fraud upon creditors. The various instruments, conveying *all* the property, executed simultaneously and in pursuance of a precon- certed plan, must be considered as one transaction, and constitute an assignment, and is void because it does not conform to the statutes.    Mansfield's Digest, sec. 305; 47 Ark. 367 ; 54 *id.* 30 ; 53 *id.* 101 ; 52 *id.* 6 ; 43 Fed. Rep. 728 ; 129 U. S. 329.

2.    The instrument conveying the notes and accounts to L. C. Locke, trustee, is an assignment for benefit of creditors and void.    Mansf. Dig. sec. 305.    It comes clearly within the definition laid down by Sandels, J., in 52 Ark. 30.    Its purpose was to *raise a fund to pay debts.*    53 Ark. 101 ; 54 *id.* 6. 52 *id.* 48.

3.    It is void because it hinders and delays creditors. 47 Ala. 200 ; 2 Bigelow on Fraud, 306-7 ; 4 Comst. 211 ; 16 N. Y. 484 ; 21 N. Y. 168 ; 1 Sand. Chy. 135 ; 11 Wend. 187–225.    It conveys *all* the debtor's property, and, after paying their *relatives*, the trustee is instructed to pay the residue back to the debtors.    If *all* the creditors had been provided for, the reservation of the surplus would have been all right, but where a part only are provided for, and the debtor is insolvent, and the conveyance car- ries all the debtor's property, such a reservation vitiates the instrument.    2 Bigelow, Fraud, 219–20 and note p. 220–225; 96 N. Y. 75 ; 17 S. W. Rep. 777 ; Cent. L. J. Feb. 5, 1892, p. 125 ; 47 Ark. p. 370 ; 7 Watts, 43 ; Kent's Com. Vol 2, 534–5, note " A," top p. 708–9, 8th Ed.

4.    The verdict was contrary to the evidence.    The issue was tried by a jury, when the statute says the issue on the attachment should be tried by the court.    Mansf. Dig. secs. 346, 354–5 ; 34 Ark. 718.    The verdict is simply persuasive, like a verdict of a jury in an equity case, and this court should try the question *de novo*, and is not bound by the scintilla rule.    The whole transaction

was simply an effort to evade our assignment laws by an insolvent firm.

*Sandels & Hill* for appellee.

1. The bill of sale to L. C. Locke & Co., the bill of sale to Orme, and the warranty deed to the lot are each in form what they purport to be. Neither of them is, nor do they all together constitute, an assignment. The transfer of the notes and accounts was merely a pledge or transfer as collateral security. The equity of redemption was retained, and on its face it was not an assignment. 53 Ark. 101 ; 54 *id*. 234 ; 53 *id*. 544 ; 54 *id*. 9 ; 52 *id*. 30.

2. The finding of the jury is conclusive.

3. The instrument transferring the notes and accounts as collateral is not void as hindering and delaying creditors. 82 Ill. 548 ; Colebrooke on Coll. Sec. sec. 86 *et seq*. ; 21 N. Y. 133.

HEMINGWAY, J. All errors alleged relate to the trial of the issue upon the affidavit for attachment.

The first is, that the conveyance of the land, the two bills of sale and the transfer of the choses in action, taken together, constitute an assignment for the benefit of creditors, which, not conforming to the statute regulating assignments, was fraudulent, and furnished grounds for attachment.

The first three instruments purported to convey property directly from debtor to creditor in payment of valid debts, and if they were in fact what they purported to be, they did not constitute an assignment in whole or in part. Whether they were in fact what they appeared to be, or were parts of a scheme to assign property in violation of the laws of the State, was a question of fact for the jury ; the law draws from them no conclusion contrary to the verdict.

It is next insisted that the transfer of the choses in action was upon its face an assignment for the benefit of

creditors, and that for this reason the attachment should have been sustained. It purported to transfer to L. C. Locke certain choses in action "as collateral to secure" M. F. Locke and L. C. Locke for all indebtedness incurred by them by reason of their having become sureties to the assignors upon certain described debts. If the choses were transferred as collateral security, the legal consequence was that the equitable ownership remained in the assignors, while the assignees held them in pledge. Colebrooke, Coll. Sec., sec. 87, and cases cited.

As the debtors were not, by the terms of the instrument, divested of the beneficial ownership, it was not an assignment; and although the debtors may have had no reasonable hope of paying the debts and retaking the collaterals, the property remained in them, and could be reached by unsecured creditors as other equitable assets may be. But it is argued that even if the choses were pledged, the transaction as to them was fraudulent because it hindered and delayed the creditors of the pledgors; the debts it secured were valid, and the debtors had a right to secure them by a reasonable pledge of their property; and as it does not appear that the value of the pledges was so in excess of the debts secured as to warrant a legal inference of fraud, and there appears to be no hindrance or delay to unsecured creditors not necessarily incident to the securing of one creditor in preference to another, we are not warranted in holding as matter of law that this pledge was fraudulent.

The direction to return the residue of the pledge to the debtors was not unlawful or fraudulent, since the creditors, while the pledge was held, could resort to it and reach the residue, and there was in fact no legal hindrance or delay interposed. Where such a provision is found in an assignment for creditors, it is held to be a fraud upon unsecured creditors because the debtor retains no interest in the property assigned that they

can reach, and the residue is thereby guarded, as against them, for the benefit of the debtor. This reason does not exist in case of a pledge or mortgage, and the rule is therefore inapplicable.

Finally, it is argued that if fraud did not appear by the face of the papers, it in fact entered into the transactions, and the verdict that there was no fraud should be set aside. Many facts and circumstances to support this view are forced upon our attention with great force, but are we at liberty to consider their weight? The issue was tried in a proceeding at law, and it is settled by a uniform line of decisions in this State that, in such cases, the finding of the judge or jury is conclusive upon us if there was any testimony to warrant it; it is not our province to weigh the evidence or determine upon which side the preponderance is found. When we find evidence which, if believed by the judge or jury, would have warranted the finding, our investigation must end.

This rule has been uniformly applied to trials upon the attachment issue, and we need say no more than that we find in the record evidence to warrant the verdict in this case.

Affirm.