WESTCHESTER FIRE INS. CO. vs BLACKFORD.

Opinion delivered June 8, 1899.

*1. Assignment for Benefit of Creditor.*

The assignment by a debtor to a trustee of all claims under insurance policies, to collect said policies and create a fund for the payment of certain designated debts of the debtor constitute an assignment for the benefit of creditors.

*2. Assignee for Benefit of Creditors—Capacity to Sue.*

An assignee for the benefit of creditors who fails to give bond as provided by law has no legal capacity to sue as such assignee.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by G. L. Blackford, trustee, against the Westchester Fire Insurance Company. Judgment for plaintiff. Defendant appeals. Reversed.

This action was brought by the appellee, G. L. Black-

ford, as trustee, to recover of the appellant, the Westchester Fire Insurance Company, upon a certain policy of insurance executed by the insurance company to Mrs. M. G. Dane on the 14th day of February, 1893, by the terms of which said policy the insurance company insured the said Mrs. M. G. Dane against loss by fire of a certain storehouse or stock of goods located at Colbert, in the Choctaw nation, Ind. T., for the period of one year, and on the 15th day of April, 1893, the said building, fixtures, and stock of merchandise covered by said policy of insurance were totally destroyed by fire. On the 24th day of April following, the insured, Mrs. M. G. Dane, transferred the policy of insurance to the appellee, G. L. Blackford, by the following indorsement written upon the policy of insurance. "For value received, I hereby transfer, assign, and set over unto G. L. Blackford, trustee, and his assigns, all my title and interest in this policy and all advantage to be derived therefrom. Witness my hand and seal, this 24th day of April, 1893. [Signed] M. G. Dane. Witness: R. C. Shearman." On the 5th day of May, 1893, she also executed to the appellee the following instrument, which was offered in evidence as a part of the record in this case: "I. M. G. Dane, of Colbert, Ind. T., for and in consideration of one dollar to me in hand paid, receipt of which is hereby acknowledged, and the uses and purposes hereinafter mentioned, I hereby assign and set over unto G. L. Blackford, trustee, of Denison, Tex., all interest and benefit in and to the loss under policies 348,638, Westchester Fire Insurance Company of New York, in my favor, $833; 212,545, the State Investment & Insurance Company, San Francisco, Cal., in my favor, $833; 112,601, Crescent Insurance Company of New Orleans, in my favor, $834,—which accrue to me by virtue of loss by fire of the stock of merchandise belonging to me, and owned by me, and situated at Colbert, Ind. T., under date of April, 10, 1893: First. The said G. L. Blackford, trustee, shall for me and in my name cause

said loss to be adjusted, or, should said companies fail or re-
fuse to adjust and settle said loss, to proceed by law to make
proofs of loss necessary, and collect said loss from the
several companies above named. Second. Upon the pay-
ment of said sums by said companies, or upon the collection
of said amounts by process of law, the said G. L. Blackford,
trustee, is hereby authorized to pay costs of collection, in-
cluding a reasonable attorney's fee and such other costs in-
cident to said collection, which shall include the usual fee of
trustee, as allowed by law in the Choctaw nation, for such
services, and out of the remainder shall pay equally and
proportionately the following accounts and notes: To the
State National Bank of Denison a note due for the sum of
$250 (two hundred and fifty dollars) at 10 per cent. interest
from maturity; the Waples-Platter Grocery Company of
Denison, Tex., an account of $523.77 (five hundred and
twenty-three $\frac{77}{100}$ dollars;) Robert Willis Taylor Company, of
Sherman, Tex., an account for $395.03 (three hundred and
ninety-five dollars and three cents) Leeper Hardware Com-
pany $262.78, Denison, Tex., an account of two hundred and
sixty-two $\frac{78}{100}$ dollars; the Alliance Mill Company of Sherman,
Tex., an account of four hundred and thirty-four and 75-100
dollars ($434.75); T. C. Horan, of Denison, Tex., an account
of $29.01 (twenty-nine and 1-100); Noyes, Norman & Co., of
St. Joseph, Mo., an account of $114.40 (one hundred four-
teen dollars and forty cents); A. N. Schuster & Co., of St.
Joseph, Mo., an account of $252.71 (two hundred and fifty-
two and 71-100 dollars); and residue to be paid to me.
Witness my hand, the 5th day of May, 1893. [Signed] M. G.
Dane. Witness: R. C. Shearman." The appellee, G. L.
Blackford, testified that he had never qualified as assignee
or trustee under these instruments executed to him by Mrs.
Dane; that he did not know that it was necessary; that he
had never filed an inventory or bond as required by the
assignment law. A verdict was rendered by the jury in

favor of the appellee, as trustee, in the sum of $833 and interest. Motion for a new trial was overruled, and judgment entered for that amount, from which the insurance company prayed and was granted an appeal to this court.

*Wm. T. Hutchings,* for appellant.

*Maxey & Martin,* for appellee.

THOMAS, J. The first error assigned by the appellant is that the court erred in admitting in evidence the assignments executed by Mrs. Dane to the appellee, the appellee testifying that he had not qualified as required by the assignment law in force in the Indian territory; and also that the court erred in refusing to direct the jury to return a verdict for the appellant, as requested by the appellant at the close of the testimony, as follows: "First. Because this plaintiff has no right to maintain this cause of action; second, because there is not sufficient proof to entitle the plaintiff to recover."

The appellant contends in its brief and argument that the instruments offered in evidence in this case by which the policy of insurance sued upon was transferred by Mrs. Dane to C. L. Blackford, as trustee, was a general assignment for creditors, and that the appellee, not having qualified as required by the law of the Indian Territory, has not the legal capacity to maintain this action.

In the case of Richmond vs Mississippi Mills, 52 Ark. 41, 11 S. W. 962, where the question as to what constitutes an assignment was directly passed upon, Judge Sandels, in delivering the opinion of the court, stated: "A deed of assignment contemplates the intervention and agency of a trustee, though none need be named in the deed. Burrill, Assignm. § 3; Burrows vs Lehndorff, 8 Iowa, 96. Hence

conveyances directly to creditors, in payment or by way of securety for their own debts solely, are not generally assignments for the benefit of creditors. Bouchad vs Dias, 1 N. Y. 201, 204; U. S. vs McLellan, 3 Sumn. 345, Fed. Cas. No. 15,698. Nowhere is the essential character of an assignment (trust deed), as contrasted with that of a mortgage, better stated than by Mr. Justice Walker in Turner vs Watkins, 31 Ark. 437. He says: 'The conclusion reached is that when the grantor parts with his title, giving it to the trustee absolutely, for the purpose of raising a fund to pay debts, this is, properly speaking, a deed of trust; but when a conveyance is to secure a debt, in case of default, thus assimilating the transaction to a mortgage, and where the intent of the grantor, instead of parting with his estate, is to retain it, in case he performs his obligation according to its terms, instruments of this class are also, but less technically, called "deeds of trust," but in substance they are mortgages.' See, also, Hoffman, Burneston & Co. vs Mackall, 5 Ohio St. 124. An assignment, then, as Burrill says, is a transfer by a debtor, without compulsion of law, of some or all of his property to an assignee or assignees, in trust, to apply the same or the proceeds thereof to the payment of some or all of his debts, and to return the surplus, if any, to the debtor. A mortgage is a security against the default of a debtor in the payment of his debts. * * * We do not hold that the giving of one or more mortgages, the confession of judgments, or other means adopted to give security or preference constitute necessarily, or even ordinarily, an assignment. But we do hold that where one or more instruments are executed by a debtor, in whatsoever form, or by whatsoever name, with the intention of having them operate as an assignment, and with the intention of granting the property conveyed absolutely to the trustee to raise a fund to pay debts, the transaction constitutes an assignment." In Appolos vs Brady, 1 C. C. A. 301, 49 Fed. 402, Judge Shiras,

in delivering the opinion for the circuit court of appeals for the Eighth circuit, stated: "The rule to be followed in determining whether a given instrument is to be deemed a mortgage or deed of assignment is fully stated by the supreme court of Arkansas in the cases of Richmond vs Mississippi Mills, 52 Ark. 30, 11 S. W. 960; State vs Dupuy, 52 Ark. 48, 11 S. W. 964; Robson vs Tomlinson, 54 Ark. 229, 15 S. W. 456; Penzel Co. vs Jett, 54 Ark. 428, 16 S. W. 120. These cases declare the test to be, has the party made an absolute appropriation of property as a means for raising a fund to pay debts, without reserving to himself, in good faith, an equity of redemption in the property conveyed? In Robson vs Tomlinson, supra, the rule is stated as follows: 'The controlling guide, according to the previous decisions of this court, is, was it the intention of the parties, at the time the instrument was executed, to devest the debtor of the title and to make an appropriation of the property to raise a fund to pay debts?' In Richmond vs Mississippi Mills, supra, it is held that, while the meaning of the instrument is ordinarily to be derived from the language used therein, yet parol evidence may be admitted showing the collateral facts surrounding the transaction, for the purpose of enabling the court to determine the actual intention of the parties in the execution of the instrument; but that if, from the entire evidence, it appears that the debtor executed a conveyance with the intention of conveying the property absolutely, and without the reservation of the right to redeem, in order that the property may be appropriated to raising a fund for the payment of debts, then the transaction constitutes an assignment." The case of Goodbar vs Locke, 56 Ark. 314, 19 S. W. 924, which is cited by the appellee to sustain his contention that these instruments did not constitute a deed of assignment, in our opinion does not apply, nor is it in any wise a parallel case to the one at bar. In that case there was no trustee, and a part of

the property was conveyed directly from the debtor to the creditor, in payment of, or as security for, the indebtedness due, and the choses in action were transferred "as collateral to secure." The court in that case said: "The first three instruments purport to convey property direct from the debtor to the creditor in payment of valid debts, and, if they were in fact what they purported to be, they do not constitute an assignment in whole or in part. * * * It is next insisted that the transfer of the choses in action was upon its face an assignment for the benefit of creditors, and for that reason the attachment should have been sustained. It purported to transfer to L. C. Locke certain choses in action 'as collateral to secure.' If the choses were transferred as collateral security, the legal consequence was that the equitable ownership remained in the assignors, while the assignees held them in pledge." Under the test as laid down by the supreme court of Arkansas and the United States circuit court of appeals for the Eighth circuit in the cases above cited, it is our opinion that the instruments in this case executed by Mrs. Dane to the appellee, G. L. Blackford, as trustee, constitute an assignment for the benefit of creditors, as this insurance policy and other insurance policies had been assigned by her to the appellee as a means for raising a fund to pay the debts enumerated in the deed of assignment, without reserving to herself an equity of redemption in the property conveyed. In the case of Richmond vs Mississippi Mills, above cited, the court further said: "This and a multitude of other decisions emphasize the statement often made that the law will not be blinded by forms or names, but will look beyond to the substance of the transaction under consideration, and fix its character according to the intention of the parties. Jones, Chat. Mortg. § 24; Horne vs Puckett, 22 Tex. 201; Hopkins vs Thompson, 2 Port. (Ala.) 433."

The next question to be considered is, if those instru-

ments did constitute a deed of assignment, can the appellee, the assignee, maintain this action without having given the bond and filed the inventory required by the assignment law? In other words, has the appellee the legal capacity to sue? In the case of Falconer vs Hunt, 39 Ark. 68, it was held that the assignee in a deed of assignment could not maintain an action against an officer for taking the assigned goods under a writ of attachment against the assignor until he had filed a writ of inventory in the probate court and given the bond required by the statute. Justice Smith, in delivering the opinion of the court in that case, said: "On the trial it was proved that the plaintiffs had not complied with the requirements of the law in the above-mentioned particulars, and the defendant requested a direction to the jury practically to the effect that, until they had done so, they had no standing in court. His prayer was denied, the plaintiffs obtained a verdict and judgment for $1,000, and the refusal of the court to charge as prayed was one of the grounds of the motion for a new trial. This instruction was proper. Clayton vs Johnson, 36 Ark. 406; Raleigh vs Griffith, 37 Ark. 150. In the case last cited it was ruled that the assignee could not maintain replevin until he had filed his schedule and bond. No more can he support trespass or trover. For both of these actions are based upon a right of possession in the plaintiff at the time of the injury or the conversion. Reversed and remanded for a new trial." In the case of Thatcher vs Franklin, 37 Ark. 64, the court held, Chief Justice English delivering the opinion, that an assignee for the benefit of creditors could not maintain an action of replevin to recover possession of any of the property assigned to him, unless he had executed and filed the bond and filed the schedule required by law. The court in that case said: "2. The deed was an absolute conveyance, and not a mortgage or ordinary trust deed, with a defeasance, and the title to the goods vested in the trustee, not

only as against the assignors, but also as against the execution creditors, without registration, and the court so rightly charged the jury. 3. But, though the deed vested the legal title to the goods in the trustee, yet by the express language of the statute regulating assignments (Gantt's Dig. §§ 385, 387), before he was entitled to take possession, sell, or in any way manage or control the property assigned, he was obliged to file the schedule, and execute the bond required by the act. Clayton vs Johnson, 36 Ark. 406. * * * The court below erred in refusing to charge the jury as moved by appellants, in effect, that plaintiff, having failed to file the schedule, and give bond as required by the statute, could not maintain replevin for the goods."

It is claimed by the appellee in his brief that the insurance company cannot question the validity of the assignment, and the case of Railway Co. vs Fuller, 18 C. C. A. 641, 72 Fed. 467, is cited to sustain that contention. In that case, Fuller, who was the assignee of Butler Bros., had filed the schedule and given the bond required by law; but the objection made by the railway company was that the deed of assignment on its face was fraudulent as to creditors. And the court in that case properly held that a debtor of the assignors could not assail a deed of assignment in that case for that reason. But there is a different principle involved in the case at bar, and that is whether or not the trustee, G. L. Blackford, had the legal capacity to maintain this suit. We are of the opinion that under every rule of reason, as well as under the foregoing decisions of the supreme court of the state of Arkansas, he clearly has not. We are therefore of the opinion that the court below erred in refusing to direct a verdict for appellant, as requested by the appellant, that the plaintiff, G. L. Blackford, trustee, had no right to maintain this cause of action.

There are other questions raised by the appellant in

his brief in this case, but it will not be necessary to consider them. The judgment of the lower court is reversed, and, by agreement of parties, judgment is rendered here, and this cause dismissed.

CLAYTON and TOWNSEND, J. J., concur.