## CAIN *v.* LANE.

### Opinion delivered July 7, 1924.

1. QUIETING TITLE—EVIDENCE.—In a suit to remove cloud on title to land created by execution sale under judgment against plaintiff's father, evidence *held* to support finding that plaintiff, and not her father, owned the land.

2. EXECUTION—TITLE OF PURCHASER.—Where a judgment debtor did not own land sold under execution, but had in good faith conveyed it to his daughter, to whom it already belonged, purchasers of the land at execution sale took subject to the daughter's rights, though the record title was in the judgment debtor at the time when judgment was recovered against him.

3. FRAUDULENT CONVEYANCES—RIGHT OF CREDITORS.—Though a judgment debtor paid for land and had it conveyed to his daughter to put it beyond the reach of his creditors, judgment creditors had no remedy unless he was insolvent.

Appeal from Faulkner Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*C. A. Holland,* for appellant.

*P. H. Prince,* for appellee.

HUMPHREYS, J. On the 8th day of December, 1922, appellee instituted this suit in the chancery court of Faulkner County against appellants to remove the cloud cast upon her title to the S½ of the NE¼ section 5, township 7 north, range 13 west, in said county, by a levy and sale under an execution issued on a judgment

obtained in the circuit court of said county by the Bank of Conway against her father, J. P. Lane, and others. The judgment referred to was procured on April 3, 1922. At the instance of the bank an execution was issued thereon and levied upon the real estate aforesaid as the property of J. P. Lane, one of the judgment debtors, and advertised for sale on December 15, 1922. On December 11, 1922, C. B. Cain, Eula Hovis, and Winnie Waddell, also judgment debtors, purchased the judgment from the bank for $1,650, and purchased the land in controversy for $25 at the execution sale on December 15, 1922, and received a certificate of purchase therefor. On December 19, 1922, they filed an intervention in this suit, claiming title to said real estate under and by virtue of their purchase thereof at said execution sale, and the bank filed a disclaimer, alleging that it had sold and assigned the judgment to the interveners. The regularity of the proceedings under the execution sale was not challenged, so the only issue presented by the pleadings and testimony introduced by the parties was whether the real estate in controversy was owned by J. P. Lane, a judgment debtor, or appellee, when the bank procured its judgment against J. P. Lane and others on April 3, 1922. This issue of fact was determined adversely to appellants, and they have duly prosecuted an appeal to this court. According to the record, only two witnesses testified in the case, J. P. Lane, the father of appellee, and G. S. McHenry.

J. P. Lane testified, in substance, that his daughter, the appellee herein, purchased the 80-acre tract of land in controversy from the Missouri Pacific Railroad Company for $600 several years before she obtained a deed thereto on March 5, 1920; that she paid $200 of the purchase money out of her earnings, and that she mortgaged the land and he mortgaged some of his to Mr. Harton to get the balance of the purchase money; that she afterwards worked and earned the money to pay off the mortgage; that she worked out some, but worked for him and her mother most of the time; that his daughter was

twenty-nine years old at the time he was testifying; that he made the payments for his daughter, but that she helped to furnish the money; that, in the spring of 1921, he arranged to borrow some money from the Conservative Loan Company upon the real estate of himself and daughter, and procured G. S. McHenry, an abstracter, to prepare an abstract of title to the lands; that the abstracter suggested it would be cheaper to get up one abstract than two, and advised him to get a deed from his daughter to the 80-acre tract, and that he would embrace all the lands in one abstract; that, pursuant to this advice, she made him a deed to the 80-acre tract on March 14, 1921, reciting the nominal consideration of $1, and that he placed the deed on record; that, later, he decided not to include his daughter's land in the mortgage, and conveyed it back to her on January 12, 1922, and that she recorded same on November 11, 1922.

G. S. McHenry testified, in substance, that he made an abstract for J. P. Lane in the spring of 1921, who was putting up all his and his daughter's land for a loan from the Conservative Loan Company; that he advised him to get a deed from his daughter, and, after obtaining the loan, to deed the land back to her, subject to the mortgage; that it was not included in the mortgage, and was deeded back to her, on his advice; that the deed from appellee to her father was a deed of convenience, and without consideration.

The record reflects that the note upon which the bank obtained its judgment was over four years old at the time of the rendition of the judgment.

The interveners were purchasers at their own execution sale, and took the land subject to the rights of appellee. *Beidler* v. *Beidler,* 71 Ark. 318. Notwithstanding the fact that the record title was in J. P. Lane, one of the execution debtors, when the judgment was rendered against him and his co-defendants, the bank and its assignees acquired no lien upon the land, if he conveyed it to appellee in good faith before the judgment was rendered against him. Appellee acquired title

by delivery of the deed, so that it could not be reached by her father's creditors unless it was conveyed to her to defraud them. According to the testimony of the witnesses, the land belonged to appellee all the time, and her father never acquired it. She conveyed it to her father as a matter of accommodation, so that he might borrow some money on it and thereafter reconvey it to her, subject to the mortgage. He did not embrace it in his mortgage, and conveyed it back to her before the judgment was obtained against him. It is argued, however, that J. P. Lane paid for the land in the first instance, and that he had the railroad company convey it to his daughter for the purpose of putting it beyond the reach of his creditors. The record does not show that he was insolvent when the company sold and conveyed the land to appellee. If J. P. Lane was not insolvent at that time, he had a right to give the land to his daughter. Again, the testimony reflects that appellee earned the money with which to pay for the land. It is true that her father made the payments, but he testified that she earned and furnished the money with which to do so. It is not unreasonable that appellee could have accumulated this amount of money by working for her father and mother and for other people. She was twenty-nine years of age when her father testified, so was old enough to have earned money long before the deed was made to her by the railroad company.

We think the finding of the chancellor is supported by the weight of the evidence.

No error appearing, the decree is affirmed.