AMERICAN ZINC PRODUCTS COMPANY v. SANDERS.

Opinion delivered October 24, 1927.

1. CORPORATIONS—INTERVENTION IN MORTGAGE FORECLOSURE. — An intervention in a mortgage foreclosure suit to set aside and cancel the mortgage as fraudulent, and as giving preference to creditors of the insolvent corporation, must fail, where it was not commenced within 90 days after execution of the mortgage, as required by Crawford & Moses' Dig., §§ 1799, 1800.

2. CORPORATIONS—DISSOLUTION OF INSOLVENT CORPORATION.—The law relating to the dissolution and winding up of an insolvent corporation attempting by execution of a mortgage to give preference to a creditor does not apply to a foreign corporation authorized to do business in the State.

3. FRAUDULENT CONVEYANCES—SUFFICIENCY OF EVIDENCE.—In an intervention in a foreclosure suit by one having a suit pending against the mortgagor, evidence *held* not to sustain a finding that the mortgage was executed without consideration and to hinder and delay creditors.

4. CORPORATIONS—EXECUTION OF MORTGAGE.—In an intervention in a foreclosure suit, wherein the intervener alleged that the mortgage was void because not executed by the mortgagor but rather by the mortgagee to itself, evidence showing that the mortgage was in fact signed by the president and secretary of the mortgagor corporation, and that the certificate of acknowledgment was executed by the same officers in their official capacities, *held* to show that the mortgage was in fact executed by the mortgagor, though by mistake the mortgagee's name was signed as mortgagor.

5. CORPORATIONS—EVIDENCE OF EXECUTION OF MORTGAGE.—Recording of a mortgage and certificate of acknowledgment showing that the mortgage was in fact executed and acknowledged by the proper officers of the mortgagor corporation, though by mistake the mortgagee's name was signed thereto, *held* sufficient to put third persons on inquiry and give notice of its existence and constituted a lien on the mortgaged property.

6. CORPORATIONS—VALIDITY OF MORTGAGE.—In an intervention in a mortgage foreclosure suit to set aside a mortgage as fraudulent, the fact that the mortgagor and mortgagee were separate corporations, connected by officers and directors, did not make the mortgage fraudulent.

7. CORPORATIONS—ESTOPPEL TO DENY EXISTENCE.—One electing to treat a company as a corporation by bringing suit against it as a corporation and alleging it to be one, will not be allowed to deny its existence.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT OF FACTS.

Appellant, American Zinc Products Company, brought this suit in the Sebastian Chancery Court to foreclose a mortgage against the Fort Smith Spelter Company, executed Dec. 14, 1922, securing a note for $210,000.

The appellee filed an intervention in said suit, alleging that he had a suit pending in the United States District Court since 1924, in which he was claiming damages to his lands by smoke from the operation of the Fort Smith Spelter Company in the sum of $16,000, and had caused an attachment to issue out of the Federal court and to be levied on the land and site belonging to said defendant spelter company, which was sought to be sold in the foreclosure of the mortgage. It is alleged in the intervention that both the zinc products company and the spelter company were organized under the laws of the State of Ohio, and ''the intervener further says that the plaintiff and defendant have entered into a conspiracy to cheat and defraud this intervener and to hinder and delay him in the collection of his debt. That said conspiracy consists of a pretended loan made by the plaintiff to the defendant and an attempt to secure such pretended and fraudulent loan by the execution of a mortgage by the defendant to the plaintiff on all of the assets owned by the defendant, the same being the real property hereinbefore described. That said note and mortgage in controversy which are sought to be foreclosed in this action were made and executed a few days after the plaintiff instituted his above-mentioned suit in the Federal court, and were given without consideration and for the purpose of placing the property of the defendant beyond the reach of plaintiff, and for the purpose of securing a judgment by plaintiff against the defendant on said note and mortgage, and the sale of said property thereunder.

The intervener further says that defendant is not indebted to the plaintiff in any sum, or in any manner whatever, and that the only consideration for said note and mortgage was an attempt to cover up defendant's property so as to put it beyond the reach of this intervener. That, as a part of said conspiracy, the defendant executed to plaintiff its note sued on in this action, and a mortgage to secure same, which pretended mortgage was placed of record in the office of the clerk and recorder in and for the Fort Smith District of Sebastian County,

Arkansas, a certified copy of said mortgage being attached hereto, marked Exhibit A and made a part of this intervention.'' And further, that the copy of the mortgage attached, as an exhibit to the complaint, was not a correct copy; and that the mortgage, as executed and recorded, shows that it was signed and executed by the plaintiff, who was the mortgagee; * * * that said purported mortgage was never signed nor executed by the mortgagor, but was executed by plaintiff, the mortgagee, to itself * * *; and ''that said purported mortgage does not create a lien on defendant's land in favor of the plaintiff, but does constitute a cloud upon the title to said defendant's land, and that, if plaintiff is permitted to take judgment in this action against the defendant and to foreclose said alleged mortgage, it will interfere with this intervener in the collection of his just debt and would be the means of putting the defendant's property beyond the reach of its creditors, including this intervener.'' Prayer was made that the mortgage be canceled and set aside, that the alleged claim be held to be fictitious and void, and the note canceled.

The reply denied that the zinc products company owned all the capital stock of the Fort Smith Spelter Company and that the corporations were one and the same, and alleged that they are separate and distinct corporations, each engaged in its own business, and denied that the Fort Smith Spelter Company was indebted to intervener in any sum or had damaged his crops in any way. Denied that the attachment was legally issued in intervener's suit in the Federal court against the property of the spelter company, and that it constituted a lien upon its property, and denied all the other allegations of the intervention. Alleged that the mortgage was executed by the spelter company in good faith and that the mortgage and notes were given for actual advancements in cash made to defendant company and used by it in payment of its debts and obligations. Alleged that the mortgage appears to be signed by the American Zinc Products Company, but in reality was

signed by the Fort Smith Spelter Company, "although the name of the American Zinc Products Company was filled in as mortgagor;" that the mortgage was duly acknowledged by C. W. Martin, as president, and C. H. Stewart, as acting secretary, and all its provisions show that the spelter company was the mortgagor and the zinc products company the mortgagee; and that C. W. Martin, who was the president of the spelter company, and C. H. Stewart, who was its acting secretary, acknowledged the said mortgage as executed in their respective capacities as such, stating "that they were the president and acting secretary of the Fort Smith Spelter Company, a corporation, and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation," etc.

Prayer was made that the court reform the mortgage by adding at the foot thereof "Fort Smith Spelter Company" instead of "American Zinc Products Company," and that it be foreclosed, and that the intervention be dismissed. Motion to dismiss the intervention was also filed, because it had not been made until the time plaintiff was entitled to his judgment of foreclosure, and because the intervener had taken no testimony in the time allowed therefor in support of his intervention, which, it was alleged, was filed for delay, the plaintiff having continually insisted upon testimony being taken by the intervener, agreeing to waive notice and to take the testimony orally.

The testimony shows that both the zinc products company and the spelter company are Ohio corporations, doing business in this State, the spelter company having been organized on the ——day of——, some time before the organization of the zinc products company. It shows extensive dealings between the two corporations, the execution of the note and mortgage, and the advancement of the money for the payment of which the note was given by the spelter company, and secured by the mortgage.

The terms of the mortgage, as written, show unmistakably that it was executed to the zinc products company by the spelter company, and the acknowledgment also shows it was so executed by the officials of the spelter company authorized to execute it by said company, notwithstanding it was signed, by mistake, as for the American Zinc Products Company, C. H. Martin being the president of both corporations.

The testimony shows that, in the course of dealings between the corporations, the greater part of the output of the spelter company was sold and delivered to the American Zinc Products Company, but the collections were made and the money paid therefor to the spelter company upon drafts with bills of lading attached through its bank in Indiana.

The American Zinc Products Company became the owner of most of the stock of the spelter company, but left enough outstanding to qualify the holders as directors and officials to continue the corporation's existence.

The chancellor denied the foreclosure of the mortgage, held it to be fraudulent, and canceled it, and appointed a receiver to take charge of the property, and from the decree this appeal is prosecuted.

*James B. McDonough*, for appellant.

*Warner, Hardin & Warner*, and *Hill & Fitzhugh*, for appellee.

KIRBY, J.    If this intervention, as appears to be the case from the allegations of the petition, be considered a proceeding to set aside and cancel the mortgage from the Fort Smith Spelter Company to the American Zinc Products Company as fraudulent and giving a preference to the creditors of an insolvent corporation, it must fail, as not having been commenced within 90 days after the execution of the mortgage complained of, as the law requires, since the mortgage sought to be foreclosed was recorded on June 24, 1924, as alleged in the intervention, which was not filed until October 14, 1925, more than a year after the execution and recording of the mortgage.

Sections 1799 and 1800, C. & M. Digest; *Nedry* v. *Vaile,* 109 Ark. 584, 160 S. W. 880.

The chancellor held the mortgage void as fraudulent, denied appellant's right to foreclosure thereof, and took charge of the mortgaged property by his receiver, under a $2,000 bond, and directed a sale thereof and that the receiver make prompt report of his action in the matter, and apply for orders with respect to the disposition of the proceeds realized from such sale, and retain jurisdiction to make orders for distribution thereof. The chancellor was without authority to order a sale of the property for winding up its affairs, as an insolvent corporation attempting, by the execution of the mortgage, to give preference to one of its creditors, as he held to be the case, since the law relating to the dissolution and winding up of an insolvent corporation, under such conditions, does not apply to a foreign corporation authorized to do business in the State. *Dickey* v. *S. W. Surety Insurance Co.,* 119 Ark. 17, 173 S. W. 398, Ann. Cas. 1917B, 634; *Macon* v. *LeCroy,* 174 Ark. 228, 295 S. W. 31.

The evidence not only does not support the court's findings that the mortgage was executed without consideration and to hinder and delay creditors in the collection of their debts and in the enforcement of their rights, but is contrary thereto, the great preponderance thereof being against such finding. The testimony is voluminous, but, notwithstanding strenuous efforts made to show that improper motives prompted the execution of the mortgage between the two corporations, we do not find anything in the evidence warranting the conclusion that the transaction was tainted with fraudulent intention, or that the effect of it was to hinder and delay creditors of the mortgagor corporation. It was not shown that there were any other creditors, or that the mortgagor corporation was indebted except to the mortgagee. The intervener was not a creditor of the mortgagee corporation in fact, but only had an alleged claim for damages to his lands, because of the operation of its plant, and for securing the enforcement of any judgment recovered an

attachment had been levied, after the execution and recording of the mortgage, upon the mortgaged property. His claim was only for $16,000, and upon the first hearing thereof a mistrial resulted. Certainly the court could not have found necessity for denying the foreclosure of appellant's mortgage, under the circumstances, and the sale of the mortgaged property, of the probable value of a half million dollars, and the taking charge of such property for selling it by a receiver, for the protection of an alleged claim for damages to the intervener, that might never be reduced to judgment, and could not exceed $16,000 in any event. The attachment issued would have protected any valid claim the intervener could have against the property attached, if the allegations of the intervention were true relative to its fraudulent conveyance, without any seizure and sale by the court's receiver in this proceeding.

Neither do we agree with the contention that the mortgage of the Fort Smith Spelter Company to the American Zinc Products Company was void, as not having been executed in fact by the spelter company, but rather by the zinc products company, as mortgagee, to itself. The entire instrument, as recorded and exhibited to this court, shows unmistakably that it was intended as a mortgage by said spelter company to the zinc products company, given to secure the payment of the note executed for advancements of money to said mortgagor, the note being correctly described in the recitals of the mortgage as the indebtedness of the spelter company, which the mortgage was executed to secure, the mortgage, in fact, being signed by the president and acting secretary of the mortgagor corporation, who, by obvious mistake, signed the name of the zinc products company instead of the spelter company, as the evidence discloses should have been and was intended to be done. The seal of the mortgagor corporation was attached with the signature, the indentation or impression showing it to be such and containing the words "Fort Smith Spelter Company," and the certificate of acknowledgment shows

that it was executed by the president and the acting secretary of the Fort Smith Spelter Company, who acknowledged that they had executed it in their respective official capacities by authority of the corporation for the Fort Smith Spelter Company, etc.

The recording of the mortgage, as executed, the whole of the writing, and the certificate of acknowledgment, showing conclusively that it was, in fact, executed and acknowledged by the proper officers of the corporation, who intended to, but by obvious mistake did not, sign its name as mortgagor, was sufficient to put third persons upon inquiry and give notice to all persons of its existence, and constituted a lien upon the mortgaged property.

The undisputed testimony established the fact that the directors of the two corporations were not always the same, that the stockholders were never the same, and, when this mortgage was executed, although C. W. Martin was president and treasurer of both companies, and C. H. Stewart was secretary of the spelter company and vice president of the zinc products company, the two companies remained separate corporations, and, even though they were so connected by the officers and directors, that fact did not make the transaction between the corporations fraudulent. They could have dealings and lend money to each other. *Jones Lbr. Co.* v. *Wisarkana Lbr. Co.*, 125 Ark. 65, 187 S. W. 1068; *Twin Lick Oil Co.* v. *Mabury*, 91 U. S. 587, 23 L. ed. 328.

Both of the corporations were organized under the laws of Ohio, where it appears the Fort Smith Spelter Company was a *de jure* as well as a *de facto* corporation, as would have been held to be the case under our court's ruling, and where a *de facto* may act as though it were a *de jure* corporation, and its corporate existence cannot be attacked in an action by or between private individuals. *Perun* v. *Cleveland*, 43 Ohio St. 481, 3 N. E. 357; *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, 186 S. W. 622.

Sanders having brought his suit in the Federal court against the Fort Smith Spelter Company as a corporation and his intervention in the chancery court alleging it was a corporation, he has elected to treat such company as a corporation, and should not be allowed to deny its existence. *Petroleum* v. *Ware*, 27 Ohio St. 343.

There is no reason in law why, under the circumstances of this case, there being no evidence tending to show that the mortgage was made to defraud or injure intervener and other creditors, the spelter company could not borrow money from the zinc products company and secure the payment thereof by a valid mortgage. *Goodbar* v. *Locke*, 56 Ark. 314, 19 S. W. 924; *Calkins* v. *Lockewood*, 16 Conn. 276, 41 Am. Dec. 143.

If the spelter company was insolvent at the time, and there was no real evidence to show that it was, the borrowing of $250,000 more, for which it executed said mortgage to secure the payment of, could not have proved injurious, in any event, to the intervener nor rendered the corporation insolvent. *Cain* v. *Lane*, 165 Ark. 205; 263 S. W. 399; *McKee* v. *Hendricks*, 165 Ark. 369, 264 S. W. 825, 952.

It follows that the chancellor erred in not reforming the mortgage as prayed, and in holding it a fraudulent conveyance, executed to hinder and delay creditors in the collection of their debts, and also in sustaining the intervention, which should have been dismissed for want of equity, and in appointing a receiver to take charge of and sell the mortgaged property. The decree is accordingly reversed, and the cause remanded with directions to reform the mortgage and foreclose same and sell the property for the payment of the indebtedness, and to dismiss the intervention for want of equity, and for all further necessary proceedings in accordance with the principles of equity and not inconsistent with this opinion.

MEHAFFY, J., not participating.